OPINION OF THE COURT
Herman Cahn, J.
Motion sequence Nos. 002 and 003 are consolidated for disposition.
Respondents move (sequence No. 002) to reargue their opposition to the petition, which petition was granted by decision and order dated March 17, 2004 (CPLR 2221). Petitioner moves (sequence No. 003) to compel respondents to comply with the March 17th order (CPLR 5104).[1] The facts are fully set forth in the March 17th order, with which familiarity is assumed.
Factual and Procedural Summary:
The petition sought a declaration that the policy of the New York City Housing Authority (NYCHA) of refusing to permit remaining family members to appear at termination of tenancy proceedings violates 24 CFR 966.53; finding that NYCHA’s failure to reopen the administrative default in this matter was a violation of petitioner’s due process rights under the Federal and State Constitutions; and finding that NYCHA’s failure to reopen the administrative default was arbitrary and capricious.
Petitioner Veronica McLaughlin resided at apartment 12-B, 80 Dwight Street, Brooklyn, a NYCHA building, with her mother, Valerie Robinson, her two sons, sister and nephew, until their eviction. She had lived in the apartment for 14 years, since the inception of the tenancy, and has always been listed on the appropriate forms as a resident of the apartment. The lessee of the apartment (the person in whose name the lease was made) was petitioner’s mother, Valerie Robinson. Petitioner alleged that Robinson abandoned the apartment without formally notifying the NYCHA Housing Manager.
Robinson failed to submit annual recertification forms to NYCHA for several years. She allegedly provided an income affidavit and some supporting income information to the Housing Manager on July 16, 2002.
NYCHA commenced a “termination of tenancy” proceeding against Robinson, by notice dated January 3, 2003. The notice *966 stated that Robinson’s tenancy was being terminated for non-verifiable income and breach of agency rules, in connection with her failure to provide sufficient income information in 2002.
Petitioner maintained that Robinson failed to respond to the notice of termination, because she had abandoned the apartment, and, thus, had presumably not received the notice. A hearing was held at NYCHA, and the Hearing Officer terminated the tenancy, on default, by decision and disposition dated January 22, 2003. The order was entered on February 12, 2003. Petitioner contended that she was not aware of the termination until she found a petition in a housing court holdover proceeding directed to her mother, relating to a holdover proceeding that NYCHA had commenced against Robinson. McLaughlin was ultimately told that she could not apply to reopen the default because she was not the head of household and the proceedings were not in her name.
On August 1, 2003, petitioner was evicted. Execution of the warrant of eviction was stayed by the housing court through August 20, 2003.
On August 7, 2003, petitioner attempted to file a “remaining family member” grievance with NYCHA. She was allegedly told that, because the tenancy had been terminated, she could not file the family member grievance. She then wrote to the chairman of NYCHA. She received a written response, dated August 25, 2003, stating that she could not request a remaining family member grievance, because her mother’s tenancy had already been terminated. The execution of the warrant of eviction was stayed until November 28, 2003, to allow petitioner to file this CPLR article 78 proceeding.
NYCHA has offered the apartment to another family on its waiting list, but has been enjoined from reletting the apartment pending determination of this motion.
The March 17th order recognized that, in reality, petitioner is the remaining head of household of the tenant family, since her mother, Robinson, abandoned the apartment. While NYCHA contended that petitioner has failed to prove this, petitioner’s sworn statement is evidence of that departure, and NYCHA did not submit any proof or even indication of Robinson’s continued residence. The order held that petitioner and her family could not lose their rights to occupy the apartment without, at least, an opportunity to be heard. Petitioner was held to be entitled to notice of a termination proceeding that would affect her and her family before it occurred.
*967 The March 17th order stated that “[b]y terminating Robinson’s tenancy, without giving notice to petitioner, NYCHA violated the federal mandate. Therefore, NYCHA’s determination to terminate the tenancy without providing prior notice to petitioner, and refusal to permit petitioner to reopen that determination, is arbitrary and capricious, and in violation of governing law.” (Mar. 17th order at 11.)
The decretal paragraphs of the March 17th order read as follows:
“ordered and adjudged that the petition is granted and the matter is remanded to the New York City Housing Authority to reopen the administrative default in the termination of tenancy proceedings and allow petitioner to present her claim to remaining head of household status; and it is further “ordered that the injunction restraining the Respondent Housing Authority from re-letting the subject apartment continues until 15 days after petitioner is served with a copy of the new administrative determination by the Housing Authority.” (Mar. 17th order at 12.)
Respondents have filed a notice of appeal from the foregoing order and have yet to comply with its terms, prompting petitioner to make the instant motion to compel compliance. Among other arguments, respondents argue that the March 17th order is stayed pursuant to CPLR 5519 (a) (1), which provides as follows:
“§ 5519. Stay of enforcement
“(a) Stay without court order. Service upon the adverse party of a notice of appeal . . . stays all proceedings to enforce the judgment or order appealed from pending the appeal. . . where:
“1. the appellant ... is the state or any political subdivision of the state or any officer or agency of the state or of any political subdivision of the state
Discussion:
The first issue is whether the New York City Housing Authority comes within the statutory definition of an “agency of the state or of any political subdivision of the state . . . .” (CPLR 5519 [a] [1].)
NYCHA was created as a public housing authority by act of the State Legislature to address the widespread and growing *968 need for adequate low-income housing in New York City (see, Public Housing Law §§ 2, 400 et seq.). The term “authority” is defined as “a public corporation which is a corporate governmental agency.” (Id. § 3 [2].) NYCHA performs uniquely governmental functions, such as maintaining a police force to promote the safety of residents of NYCHA housing (id. § 402 [5]).
In view of the foregoing, and of the purpose of the automatic stay of CPLR 5519 (a), which is “to stabilize the effect of adverse determinations on governmental entities and prevent the disbursement of public funds pending an appeal” (Summerville v City of New York, 97 NY2d 427, 434 [2002]), the New York City Housing Authority is a governmental entity coming within the purview of the automatic appellate stay (accord, Russell v New York City Hous. Auth., 160 Misc 2d 237 [Sup Ct, Bronx County 1992]; see also, Price v New York City Hous. Auth., 92 NY2d 553 [1998] [referring to NYCHA as a “public entity”]; McPherson v New York City Hous. Auth., 228 AD2d 654 [2d Dept 1996] [referring to NYCHA as “a governmental defendant”]).[2]
The second issue is whether the automatic stay applies specifically with respect to the March 17th order, which (i) ordered NYCHA to reopen the administrative default in the termination of tenancy proceedings, and allow McLaughlin to present her claim to remaining head of household status, and (ii) restrained NYCHA from reletting McLaughlin’s apartment (Mar. 17th order at 12).
As indicated above, although petitioner’s motion is purportedly cast as an article 63 motion for a preliminary injunction, it decidedly is not, given the postjudgment nature of the motion (see, supra at 965 n 1). Rather, the motion is, in every sense, a CPLR article 51 motion to enforce the March 17th order (see, id.). As such, the court is constrained to agree with respondent that the automatic stay literally applies here, as it explicitly operates to stay “all proceedings to enforce the . . . order appealed from.” (CPLR 5519 [a].)[3]
*969 This court is not empowered to lift the automatic stay; however, petitioner may apply to the Appellate Division for such relief (CPLR 5519 [c]). Her current predicament of being expelled from her residence of 14 years, together with her children, and the imminent and irretrievable risk of NYCHA’s reletting of the apartment, may constitute the type of “undue hardship against the litigant,” justifying appellate vacatur of the stay (Clark v Cuomo, 105 AD2d 451, 452 [3d Dept 1984]).[4]
Accordingly, it is ordered that the motions (numbered 002 and 003) are denied, without prejudice to renew upon the expiration of the automatic stay (CPLR 5519 [a] [1]) in the event of affirmance of the court’s decision and order, dated March 17, 2004, on appeal.

. Plaintiffs counsel erroneously casts the motion as one for a preliminary injunction, citing CPLR 6301 (notice of motion at 1; Levy affidavit 1116). This motion, in reality, seeks to enforce the March 17th order (CPLR 5104), which finally disposed of this proceeding, in petitioner’s favor.

. Cf., Matter of Ronan v Levitt, 73 Misc 2d 35 (Sup Ct, Albany County 1973) (holding that the stay applies to a public authority, but not to its officers), affd 42 AD2d 10 (3d Dept 1973), lv denied 33 NY2d 514 (1973).

. This disposition does not require the court to opine on what has been described as a split between the First Department and other departments of the Appellate Division as to whether the automatic stay relates exclusively to enforcement proceedings (Matter of Pokoik v Department of Health Servs., 220 AD2d 13 [2d Dept 1996]; Walker v Delaware & Hudson R.R. Co., 120 AD2d *969 919 [3d Dept 1986]; Rotondo v Reeves, 192 AD2d 1086 [4th Dept 1993]), or whether it relates broadly to all proceedings pending appeal (Eastern Paralyzed Veterans Assn. v Metropolitan Transp. Auth., 79 AD2d 516 [1st Dept 1980]; see generally, Silver v Pataki, NYLJ, Mar. 23, 1999, at 28, col 4 [Sup Ct, NY County, Lehner, J.]; Siegel, NY Prac § 535, at 884 [3d ed 1999]).

. Petitioner attests that her current living conditions have caused one of her children to suffer from critical complications resulting from asthma (McLaughlin affidavit 113).